# Kentucky & West Virginia Power Company v. Terry.

(Decided March 24, 1931.)

CRAFT & STANFILL for appellant.

R. M. FITZPATRICK and E. C. DUFF, Jr., for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The Workmen's Compensation Board held that the appellee, William Terry, an employee of the appellant

company, was not entitled to disability compensation for injuries suffered in the line of his employment. On a petition for review, the Perry Circuit court held that the Compensation Board should have allowed his claim, that the petitioner had suffered a 50 per cent. permanent disability while engaged in work within the scope of his employment, and thereupon rendered a judgment against the appellant for $2,000 and costs. For that sum an immediate execution was awarded on the judgment.

It is the well-recognized rule that the courts may not interfere with the award of the Workmen's Compensation Board on a disputed question of fact or where there is any conflict in the evidence. That rule is just as applicable when the decision is adverse to the employee as to the employer. Utilities Coal Corporation v. Brock, 225 Ky. 223, 7 S. W. (2d) 1037; Hazard Blue Grass Coal Corporation v. Clemens, 209 Ky. 486, 273 S. W. 47; Price v. Louisville Hydro-Electric Co., 230 Ky. 562, 20 S. W. (2d) 448.

The appellee went to work for the company on October 12, 1927, as a member of a crew constructing a new power line in the mountains. The next day, while stretching a wire, or rather laying it on the ground in preparation for stringing on the poles, he suffered a severe electrical shock. Mules were attached to the end of the wire, and Terry was guiding it with his hands to keep it from kinking. It seems the wire was pulled up from a valley, and, as it was elevated and strung from one hillside to another, it came in contact with a wire heavily charged with electricity. The appellee's evidence was that he was "knocked out for three hours." His hands were blistered and toes burned. He claims also that since he received the shock he has been able to work only about three hours a day. But he returned to the same kind of work with this company within three or four days and continued at it until he voluntarily quit its service about six weeks later and went back to work on his farm. During this period the records of the company show that he worked full time every day. Two weeks later he applied for another job, but there was no opening for him. No complaint seems to have been made during this time as to any injury other than that related and for which he was given prompt surgical attention by the company.

Before the board, the claimant testified that since he had suffered continuous pains in the back and was not as stout as he was before, and that he was incapacitated for

heavy labor. He also developed, as a result of the accident, bladder and other physical disabilities, concerning which his own testimony is very meager. In June following the accident in October, Terry consulted Dr. G. W. Morgan and Dr. J. C. Sumner, who testified to having found him to be stiff in the lumbar region and suffering from pain and an inability to control his bladder. The patient told the doctors as a part of the history of his case that he had been "hit with an electric wire." On a hypothetical question the doctors expressed the opinion that the shock caused his trouble. They estimate his disability as being from 50 to 75 per cent. Neither of these doctors had had any experience with patients who had been so shocked. They did not treat Terry, but only examined him, and that examination does not appear to have been very complete.

The company introduced several men who testified to having received similar electric shocks and who suffered no injuries from them other than some blisters and burns, which soon healed. Dr. A. T. Gross examined Terry immediately after the accident. He testified that Terry never related to him any disability such as that claimed before the board. Dr. Gross testified to having had quite a bit of experience with similar cases, and that he never heard of an electric shock causing a man to have incontinence of urine after recovery from the immediate effects of the shock. He knew of no authority on that subject so holding.

From the foregoing rather full statement of the evidence, it will be seen that there was substantial and credible evidence to support the finding of the Workmen's Compensation Board. The trial court therefore erred in setting aside that award.

The judgment is reversed, with directions to enter one giving effect to the finding of the Workmen's Compensation Board.